UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-cr-80034

UNITED STATES OF AMERICA,

vs.

ARISTIDE MEZZOIUSO,

    Defendant.
_____/

**DEFENDANT ARISTIDE MEZZOIUSO'S SENTENCING MEMORANDUM AND REQUEST FOR IMPOSITION OF JOINTLY RECOMMENDED SENTENCE OF 120 MONTHS IMPRISONMENT**

    Defendant, ARISTIDE MEZZOIUSO ("Mr. Mezzoiuso"), by and through the undersigned counsel, hereby presents this Sentencing Memorandum and request for imposition of the jointly recommended sentence of 120 months imprisonment, to aid this Honorable Court in its determination of the sentence to be imposed. Mr. Mezzoiuso also sets forth his position to the guideline calculations proposed in the Presentence Investigation Report ("PSI"). In support thereof, Mr. Mezzoiuso states as follows:

**I. INTRODUCTION:**

    On March 22, 2023, Mr. Mezzoiuso pled guilty to a two-count Indictment charging him with attempted coercion and enticement of a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b) and attempted transportation of a minor with intent to engage in criminal activity, in violation of 18 USC § 2423(a). Mr. Mezzoiuso knows these are serious charges. Indeed, the terms of the written Plea Agreement he signed as well as the PSI prepared in this case, confirm these are serious charges which require imposition of a mandatory minimum sentence of 120

1

months' imprisonment with an agreed upon term of supervised release of life. Related to this offense, Mr. Mezzoiuso has been incarcerated continuously since March 3, 2023.

Mr. Mezzoiuso is a 66-year-old New York native who moved to South Florida on a full-time basis in 2016.  He is a single man who has never married nor fathered any children. He is a hard worker with a stable employment history that spans over 43 years. He has absolutely no prior criminal history.

Any sentence with a lengthy mandatory minimum term of imprisonment for a 66-year-old man leaves in question the likelihood of him living as a free man again in his lifetime.  Mr. Mezzoiuso can expect to receive statutory good time, pursuant to 18 U.S.C. § 3624(b), reducing the time he will serve on any prison sentence imposed by this Court, by approximately 15%.  However, the nature of the instant offense potentially bars him from receiving the benefit of an early release to a halfway house under 18 U.S.C. § 3624(c)(1). If Mr. Mezzoiuso survives the prison sentence requested via this memorandum, 120 months or 10 years, he will be well into his seventies.  Any sentence imposed in this case will require sex offender registration, notification and allows for a term of supervised release of life under the jurisdiction of this Court. Where Mr. Mezzoiuso is permitted to live and work, and who he associates with, will be dictated by his status as a convicted sex offender.

Notwithstanding all the above, Mr. Mezzoiuso has accepted responsibility for his involvement in the offense, and he is profoundly remorseful.  With that said, we believe a sentence of 120 months or 10 years, for this 66-year-old, first-time offender, is *reasonable*, and this filing will present sentencing factors under 18 U.S.C. § 3553 in support of that sentence.

## II. OBJECTIONS TO PSR:

A few corrections to non-sentencing issues contained in the PSI were requested from the probation officer. The requested corrections were made by way of the addendum. Specifically, as to ¶51 of the PSI, Mr. Mezzoiuso's home in Lighthouse Point has two bedrooms.

As to ¶54 of the PSI, Mr. Mezzoiuso wishes to clarify that he did not have back surgery in 2020. In 2020, he was treated by an orthopedic physician for lower back pain. Prior to his arrest, he was awaiting a consultation with a back surgeon. Since his incarceration, Mr. Mezzoiuso has been authozied to sleep on the lower bunk due to his chronic back issues. He also has an outstanding request for supplemental bedding to ease his back pain. In addition, Mr. Mezzoiuso has a pending request for a dental consultation and an auditory consultation related to his on-going hearing issues. Mr. Mezzoiuso also notes that his dose of mirtazapine is 15mg.

As to ¶60 of the PSI, Mr. Mezzoiuso's high school graduation/diploma was verified by New Utrecht High School and it is requested that the PSI be revised to reflect this educational information.

As to ¶65 of the PSI, Mr. Mezzoiuso was employed by Best Doctors Insurance Services from October 2015 until May 9, 2022.

As to ¶114 of the PSI, which addresses a Standard Condition of Supervision related to travel, Mr. Mezzoiuso requests that he be allowed to visit family outside of the judicial district he is authorized to reside in. Mr. Mezzoiuso understands that preapproval of all travel is required.

There are no objections to Guideline calculations presented in the PSI. However, as to ¶21 of the PSI, Mr. Mezzoiuso wishes to clarify, that during his post-arrest interview, he did not confess to having underage sexual relations with the Minor Victim. Mr. Mezzoiuso did have sexual relations with Minor Victim once she turned 18; however, he did not confess to an underage sexual

relationship during his post-arrest interview. He also denies that a second sexual encounter with the Minor Victim occurred when she was underage. Further, to the extent that ¶103 implies that Mr. Mezzoiuso had underage sexual relations with the Minor Victim, Mr. Mezzoiuso reiterates he did not have underage sexual relations with the Minor Victim.

### III.  SENTENCING MEMORANDUM:

The following is submitted pursuant to the sentencing factors of 18 U.S.C. § 3553 in support of a sentence of 120 months imprisonment to be followed by supervised release for the remainder of Mr. Mezzoiuso's life. This jointly recommended sentence adequately serves the retributive, punitive, protective, and deterrent goals of sentencing.

**Application and Consideration of 18 U.S.C. § 3553 Factors**

Based on the forthcoming analysis of Mr. Mezzoiuso's mitigating 18 U.S.C. § 3553(a) factors, we respectfully ask the Court to impose the sentence jointly recommended by the parties, which is a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in [3553(a)(2)]."

**"The nature and circumstances of the offense and the history and characteristics of the defendant." (18 U.S.C. § 3553(a)(1)):**

**A.  Nature and Circumstances of the Offense**

**Offense Conduct:** Mr. Mezzoiuso was cooperative with law enforcement at the time of his arrest. (Detention Hearing Transcript, Pg. 37) The nature and circumstances of this case are unique. First, the offense conduct occurred almost four years ago. It has been over three years since Mr. Mezzoiuso was identified by law enforcement through text messages as having

4

inappropriate communications with persons under the age of 18. The final facts of the offense reveal the victim was approximately 17 and a half years old at the time of the offense conduct and that, ultimately, Mr. Mezzoiuso never travelled to meet anyone under the age of 18.

**Resolution of Criminal Liability and Acceptance of Responsibility:** Mr. Mezzoiuso did not put the government to its burden and has sought a resolution of the criminal matter from an early onset. Mr. Mezzoiuso has accepted full responsibility for his involvement in this offense, as detailed in his Factual Proffer, and he has received the standard guideline reduction for Acceptance of Responsibility, pursuant to § 3E1.1.

**B. The History and Characteristics of the Defendant**

**Personal and Family History:** Mr. Mezzoiuso is a first generation Italian immigrant. He is one of four children born to Francesco and Concetta Mezzoiuso. He was raised in Palermo, Italy and Brooklyn, New York by loving parents under working class socioeconomic conditions. Both parents worked to provide the best home possible for the Mezzoiuso children. Mr. Mezzoiuso describes his parents as selfless and he fondly remembers being raised in a loving, abuse-free home. As they aged, Mr. Mezzoiuso was dedicated to the care and wellbeing of his parents.

Mr. Mezzoiuso completed high school and briefly attended college. He quickly found employment and followed in the foot steps of his hard-working parents. He lived with his parents until the approximate age of 28. Regarding romantic relationships, Mr. Mezzoiuso has never married but he did have one long-term relationship that lasted approximately 15 years. As an adult, Mr. Mezzoiuso filled his time with work, family obligations and charitable endeavors.

In the early 2000s, Mr. Mezzoiuso moved back into his parent's home as they were aging and in need of supplemental care. Between 2004 and 2016, both Francesco and Concetta

5

Mezzoiuso fell ill and needed varying degrees of caregiving. Francesco Mezzoiuso died first, in 2011, from complications related to a stroke. In 2016, Concetta Mezziouso died, also from stroke-related complications. For well over a decade, Mr. Mezzoiuso managed his parents' needs, both physically and financially, all while maintaining full-time employment. During some of these years, Mr. Mezzoiuso would commute between work in Missouri during the week and caring for his parents in New York, on the weekends. Mr. Mezzoiuso juggled his employment and caregiving responsibilities for an extended period of time and he did so without hesitation. It was not until his mother passed away in 2016, that Mr. Mezzoiuso moved to Lighthouse Point, Florida, on a full-time basis.

Mr. Mezzoiuso has three siblings, Dino, Giovanni and Rosemarie. His brother, Giovanni, is disabled and in poor health. While all three of his siblings remain wholly supportive, he is especially close with this sister, Rosemarie.

**Age and Physical Health:** According to the Centers for Disease Control, National Center for Health Statistics, as of 2022, the average life expectancy of a non-Hispanic, white male was 74 years. Mr. Mezzoiuso will begin serving a ten year term of imprisonment at the age of 66. Mr. Mezzoiuso has accepted responsibility for his actions which includes acceptance of the punishment to be imposed. He simply hopes it is not a defacto death sentence. Section 5H1.1 of the Guidelines provides that age "may be relevant in determining whether a departure is warranted, if considerations based on age, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical case covered by the guidelines." While Mr. Mezzoiuso realizes that every defendant has his or her own health issues, he, at 66-years-old, facing a 10-year mandatory minimum sentence, is hardly

6

the ordinary defendant in age or health and fits squarely into the language and purpose of § 5H1.1.

The "Silver Tsunami" by Evan A. Jenness and published in the September/October 2013 Champion, discusses the issue of elderly and infirmed inmates. What is "old" when it comes to sentencing a defendant to prison is not the equivalent of "old" in the outside world. The median age of a federal defendant at sentencing is 36.[1] The National Institute of Corrections defines prisoners 50 and older as "elderly" and "aging",[2] and 15 states specifically define an "older" inmate as 50 or older.[3] Only 3.8% of all federal inmates are over the age of 60.[4] No matter the age benchmark chosen, Mr. Mezzoiuso surpasses it. Mr. Mezzoiuso is certainly an outlier as a 66-year-old entering the federal correctional system for the first time.

Mr. Mezzoiuso's health issues compound this problem. As documented in the PSI, Mr. Mezzoiuso suffers from chronic back pain, insomnia, dental problems, and he is experiencing vision, hearing and memory deficits that are of concern. In the 15 months he has been incarcerated to date, Mr. Mezzoiuso has suffered noticible hearing, vision and memory decline. The hearing, vision and memory concerns weigh heavily on Mr. Mezzoiuso as he realizes, due to his incarceration, he will not have access to comprehensive and consistent medical intervention to slow the pace of his physical decline. A ten year term of imprisonment served by a 66-year-old will most likely result in more extreme collateral consequences than the same term served by a young man.

Mr. Mezzoiuso's age and health, however, are more than just a compelling reason for

---

[1] USSC Sourcebook FYE 2023, Table 7
[2] Dr. Joann B. Morton, An Administrative Review of the Older Inmate, USDOJ, National Institute of Corrections, 4 (1992)
[3] Human Rights Watch, Old Behind Bars: The Aging Prison Population in the United States (2012), at 17
[4] USSC Sourcebook FYE 2023, Table 7

mercy and compassion, but also is directly relevant to the analysis of 18 U.S.C. § 3553(a)(2), strongly weighing in favor of the Court imposing the jointly recommended sentence of 120 months imprisonment. *See United States v. McFarlin*, 535 F.3d 808, 811 (8th Cir. 2008) (upholding a sentence of three years' probation despite a guidelines range of 60 months based largely on defendants age, medical condition, and post-arrest rehabilitation, stating, "[t]he Guidelines also provide that, when considering a defendant's age, a court may consider alternative forms of incarceration for an elderly, infirm defendant that would be 'equally efficient' as incarceration") (citation omitted). Mr. Mezzoiuso's personal risk of recidivism is low, as shown by his zero criminal history points and exemplary post-offense behavior, but is also inherent to his age and health. *See* U.S. Sent'g Comm'n (USSC), Older Offenders in the Federal System 43 (2022) (finding the recidivism rate for offenders over the age of 50 to be less than half of that of offenders under the age of 50); *United States v. Clay*, 483 F.3d 739, 745 (11th Cir. 2007) ("Both the Guidelines calculations and the sentencing factors of section 3553(a) require a judge to consider characteristics of the defendant and the offense that make it more or less likely that the defendant will reoffend."); *United States v. Green*, 2007 WL 869725, at *2 (S.D. Ohio Mar. 20, 2007) ("[D]istrict courts have routinely considered a defendant's age as part of their analysis on the grounds that older defendants exhibit markedly lower rates of recidivism compared to younger defendants[.]").

      Mr. Mezzoiuso's advancing age and increasing health conditions will potentially tax the resources of the Bureau of Prisons, place an added risk to the inmate, and exacerbate present conditions. Certainly, due to his age and health, incarceration will be far more challenging to him and the BOP compared to the vast majority of the inmate population. Mr. Mezzoiuso

understands he is facing a mandatory minimum term of imprisonment of ten years. He simply asks the Court to consider his age and health, and the relationship between age and the purposes of punishment outlined in 18 U.S.C. § 3553(a)(2), and not impose a sentence greater than 120 months' imprisonment.

**Criminal History:** Mr. Mezzoiuso has absolutely no criminal history and is a true first time offender. Due to the nature of his offense, he is precluded from the benefit of this designation related to the Zero-Point Offender Amendment.

**Charitable Deeds and Commitment to Community:**

Mr. Mezzoiuso has always dedicated time and resources to his community. In addition to serving as the caregiver for his parents, during his professional career, he contributed to the United Way and coordinated for his large team of employees to do the same. In the 1980s, 1990s, and 2000s, Mr. Mezzoiuso participated in the 5K Corporate Challenge run in Central Park, Manhattan, New York representing Lord & Taylor and in 2015, he completed the Bridge to Towers run in New York City to benefit the families of the September 11th terror attack. During these years, Mr. Mezzoiuso also volunteered to paint classrooms and fences in New York City, and he attended and contributed to approximately 15 fundraiser events organized by his employers. In addition, for many years, he volunteered as the president and board member of non-profit housing cooperatives in both Brooklyn, New York and St. Louis, Missouri.

**Family Support:** Mr. Mezzoiuso is close with his family and they will provide him with emotional support both while incarcerated and upon his release from prison. Attached are five character letters attesting to Mr. Mezzoiuso's character and his exceptional family support. These testimonials speak to Mr. Mezzoiuso's kindness, helpfulness, generosity, and work ethic. A few excerpts

are included below, but the Court is invited to review them all prior to sentencing.

Anne Ilardi, Mr. Mezzoiuso's cousin wrote:

> "Ari has always been an empathetic, courteous, and well-mannered young man who took pride in his roots, his family and himself. He was devoted to his parents and moved in with them in their time of need. He tended to their hygiene, medicines, their mobility and their funerals."

Salvatore Ilardi, Mr. Mezzoiuso's cousin wrote:

> "There is no comfort like the feeling of knowing that if I had any kind of problem I could call Ari and he would find a way to help me resolve it right away whether through knowledgeable advice or getting physically involved. He always showed up at my home to respond to our needs without delay. Ari Mezzoiuso has always been for me a person who is kind, corteous, respectful and considerate."

Rose Acquaviva, Mr. Mezzoiuso's cousin wrote:

> "I could go on for days regarding Ari's genuine love, affection and devotion for his family and ours. He worked continuously-long days, nights and weekends. He helped all of his family members in any way they needed. Ari is an honorable, loyal man to anyone who has had the pleasure of knowing him."

### C. The Need for the Sentence to Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment and Deterrence

**Bureau of Prisons Issues Unique to Mr. Mezzoiuso:** As a sex offender, the time served by Mr. Mezzoiuso will be different than time served by most inmates. Mr. Mezzoiuso is potentially not eligible for time in custody reductions associated with the First Step Act, RDAP, 2nd Chance Act or the Zero-Point Offender amendment. The Bureau of Prisons encourages visiting by family, friends, and community groups to maintain the moral of the inmate and to develop closer

relationships between the inmate and family members or others in the community" (see BOP p.s. 5267.07). However, inmates convicted of sex offenses are typically barred from designation to a minimum-security camp, may be designated further from friends and family, they are not eligible for early release to a community confinement center, and they have difficulty finding any place to live as a registered sex offender. Pursuant to 18 U.S.C. § 3624(c)(1), generally, inmates serving a term of incarceration are to spend a portion of the final months (not to exceed 12 months), under conditions that will afford them a reasonable opportunity to adjust to and prepare for reentry of that prisoner into the community. The offenses of conviction potentially bar Mr. Mezzoiuso from the benefit of these provisions and the result is that any sentence imposed by this Court will have him serve more jail time than most other inmates.

Most significantly, under the First Step Act, the Bureau of Prisons established the Elderly Offender Program which applies to inmates age 60 or greater. Program eligible inmates are considered for release to home confinement under the program upon service of two thirds of their sentence[5]. Due to his offenses of conviction, Mr. Mezzoiuso may be ineligible for the benefits of this program.

Mr. Mezzoiuso's age also carries with it complications to how his time in custody is served. An elderly inmate can be more vulnerable to abuse and may need accommodations that are difficult to obtain in a relatively inflexible physical environment. As previously mentioned, correctional healthcare addressing the needs of the elderly inmate is minimal and often insufficient.

**Collateral Consequences**

---

[5] See https://www.bop.gov/inmates/fsa/faq.jsp#fsa_elderly_offender, which also indicates the two thirds calculation does factor in Good Conduct Time.

Beyond the term of imprisonment to be imposed, Mr. Mezzoiuso's conduct has resulted in significant collateral consequences. He lost his employment and stellar professional reputation and he will face hurdles to rejoining the corporate world upon his release from prison. He has experienced a tremendous financial impact which reduced his anticipated retirement savings by approximately 80%. He is aware that additional financial assessments will be ordered at the time of sentencing. Mr. Mezzoiuso will have less ability to socialize with family and friends in the future due to his anticipated social restrictions. He has lost cherished civic liberties, experienced a diminution of civic rights and will forever carry the stigma of being a convicted sex offender.

For these reasons, Mr. Mezzoiuso again asks that the Court not sentence him above the jointly recommended term of 120 months, which is a *reasonable and not greater than necessary sentence.*

## IV. CONCLUSION

Mr. Mezzoiuso has accepted responsibility for his involvement in this offense. He understands that the choices he made impacted the well-being of the victim in this case. For this, he is deeply ashamed and remorseful.

Based upon the facts and factors set forth above, Mr. Mezzoiuso respectfully requests this Court impose 120 month term of imprisonment to be followed by a life term of supervised release in this case, as jointly recommended by the parties.

Mr. Mezzoiuso and counsel thank this Court for considering our Sentencing Memorandum.

Respectfully submitted,

/s/ Jason Kreiss  
Jason Kreiss  
Florida Bar No.: 87912  

/s/ Marc D. Seitles.  
Marc D. Seitles  
Florida Bar No.: 0178284  

12

| | |
|---|---|
| The Kreiss Law Firm | Seitles & Litwin, P.A. |
| 1824 SE 4th Avenue | Courthouse Center |
| Fort Lauderdale, FL 33316 | 40 NW 3rd Street, PH One |
| Ph: 954-525-1971 | Miami, FL 33128 |
| Fax: 954-525-1978 | Ph: 305-403-8070 |
| Email: jwk@kreisslaw.com | Fax: 305-403-8210 |
| | Email: mseitles@seitleslaw.com |

**CERTIFICATE OF SERVICE**

I hereby certify that on June 4, 2024, undersigned electronically filed the foregoing document with the Clerk of the Court using CM/ECF which will send notification of such filing to all counsel of record.

 /s/  Marc David Seitles
Marc David Seitles